UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-CR-20356-RNS

UNITED STATES OF AMERICA

v.

JAMES CATALANO,

    **Defendant.**
_____/

### UNITED STATES OF AMERICA'S RESPONSE TO THE DEFENDANT'S OBJECTIONS TO THE PRESENCE INVESTIGATION REPORT ("PSI") AND SENTENCING MEMORANDUM

The defendant pled guilty to stalking victim F.G., an advocate against gun violence and the father of one of the Parkland shooting victims, for several months. The defendant's heinous messages accused the victim of molesting his daughter and graphically described the manner of her death and her pain and suffering as she died. The defendant admitted to law enforcement that he sent these messages to the victim because he believed the victim was using his daughter's death to further his own political agenda. As such, a guidelines sentence of 20 months' imprisonment is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

### PRESENTENCE INVESTIGATION REPORT OBJECTIONS

The defendant objects to the guidelines as calculated by United States Probation ("Probation") because the plea agreement details that no specific offense enhancements should apply to the defendant's total offense level (DE 45). The United States agrees that the plea

agreement so provides. As such, the defendant's advisory guidelines range should be adjusted to 18-24 months' imprisonment.

## THE STATUTORY FACTORS

The facts of this case and the defendant's conduct warrants a sentence of 20 months' imprisonment. A guidelines sentence is necessary here due to the seriousness of the offense, the history and characteristics of the defendant, the need to deter criminal activity, the need to promote respect for the law, and the importance of protecting the public. *See* 18 U.S.C. § 3553(a).

### A. The Nature and Circumstances of the Offense

The nature and circumstances of the defendant's offense conduct are deeply troubling. By his own admission, the defendant was motivated to stalk the victim and send him heinous messages simply because he disagreed with the victim's political views. As the defendant acknowledged in his post-*Miranda* statement, he wanted to keep the victim "in check" because the defendant felt the victim was using his daughter's death to further his political agenda. Plainly, the defendant disagreed with the victim and his activism against gun violence, and he capitalized on the victim's grief and the horrific nature of his daughter's death in order to silence him.

The nature of this offense is callous and cruel. The defendant messaged the victim multiple times a day, accusing him of sexually abusing his daughter and making references to others sexually assaulting her, too. For example, in May 2022, the defendant wrote, ""Hey [F.G.]........you seem super agitated today. Using the F bomb and capital letters. Any truth to the rumor that [J.G.] was raped on the day she was shot/slaughtered/murdered/finally free from you?" (PSI ¶ 18.z). He also wrote, on June 28, 2022: "Daddy.........Daddy......why do you keep coming into my room, pulling down my underwear and touching me there? Why?" (PSI ¶ 18.ee). As if the trauma of losing a child to a school shooting were insufficient, the victim was forced to endure these relentless,

torturous messages for months, never knowing, each time he opened his email, when a new one would appear.

The defendant's history and characteristics further support a guidelines sentence. As described in more detail below, the instant offense was not an aberration. Indeed, the defendant engaged in nearly identical conduct in 2021 and, despite being warned by law enforcement and avoiding criminal charges, the defendant escalated his conduct by finding a new victim and sending even more frequent and more disturbing messages from behind the safety of his computer screen.

### B. The Need to Promote Respect for the Law

The defendant's willingness to continue engaging in criminal conduct, despite the prior investigation where he was confronted by law enforcement, demonstrates his disrespect for the law. In 2021, the defendant admitted to sending a series of messages to a business owner (PSI ¶ 25). One such message stated, "YOU bit off more than you can chew, faggot. Once escrow closes, watch what happens next. SHUT your fucking faggot mouth." This message was submitted through the contact tab of a webpage for the victim's business. *Id.* Law enforcement investigated the origin of these messages and traced the IP address to the defendant. *Id.* When confronted by law enforcement, the defendant admitted to sending the harassing messages and expressed his remorse. *Id.* As such, the defendant was never charged. Still, the defendant not only persisted, but escalated his criminal conduct, demonstrating his disrespect for the law.

Moreover, as part of his bond conditions in this case, the defendant was required to engaged in mental health treatment. Despite the defendant's claims that he is remorseful and dedicated to change (DE 45), the PSI details the defendant's denial that he suffers from *any* mental health issues, which directly contradicts statements the defendant made to his treating psychologist (PSI

¶ 63). And despite requests from both the defendant's family and his treating physician, the defendant refused to engage in psychiatric treatment recommended by Dr. Haber beginning in or around January 2023 (DE 45 at 11) (describing the defendant's family's failed attempts to enroll him in psychiatric evaluation and treatment); (PSI ¶ 67). This is significant because any non-incarceratory portion of the defendant's sentence, such as any time he spends on supervised release, should contain a mental health treatment component to assist in the defendant's rehabilitation and protect the public from future crimes of the defendant. The defendant's unwillingness to recognize his mental health issues certainly constitutes an impediment to his ability to adequately comply with any special conditions or treatment requirements set forth by this Court. Indeed, the defendant failed to comply with Probation's request to disclose information pertaining to his mental and emotional health diagnosis and treatment, which was disputed by his attorney (PSI ¶ 50).

Additionally, when requested to provide family members' contact information and signed confidential release documents to permit Probation to conduct its investigation, the defendant refused (PSI ¶ 50). Probation was unable to corroborate the defendant's self-reported information, and the defendant's refusal to comply with the probation officer's instructions "impeded" the presentence investigation (PSI ¶ 51).

The defendant's obstinance demonstrates his disrespect for the law. Despite having every incentive to cooperate with the probation officer and to provide information to verify his background, the defendant refused to do so for over six months,[1] despite repeated attempts to obtain that information from both Probation and his attorney. *Id.*

---

[1] The defendant pled guilty in March 2023 (DE 28).

### C. The Need to Protect the Public

Aside from his messages to the victim here, the defendant's conduct spanned far beyond victim F.G. Indeed, the defendant targeted several of the victim's associates in the same manner he targeted F.G. (PSI ¶ 27). For example, the defendant messaged known advocates against gun violence, stating, in one instance: "when that cunt [T.S.] says women will die, does that mean [T.S.] will die? I hope so, bitch." (PSI ¶ 27.n.). Th defendant also messaged a known MSNBC national security analyst after his coverage of the Uvalde and Tulsa, Oklahoma mass shootings (PSI ¶ 28). The defendant wrote, "as a gay faggot cunt, can [F.G.] speak at our pride rally this month?" The defendant's conduct makes plain that he hides behind his computer screen to intimidate those who publicly support policies he disagrees with.

### D. General and Specific Deterrence

As described above, the defendant's warnings from law enforcement in 2021 were insufficient to deter him from future criminal conduct. But even beyond the need to specifically deter this defendant from continuing to engage in criminal activity, the sentence imposed must reflect that cyber harassment will not be tolerated.

Cyber harassment is a prolific problem in the United States. The Pew Research Center reports that there has been a double-digit increase in those experiencing online abuse—rising from 16% to 28% since 2014.[2] Indeed, forty-one percent of adults in the United States have personally experienced online harassment, and twenty-five percent have experienced more severe harassment, which was defined as encompassing physical threats, stalking, sexual harassment and

---

[2] *See* The State of Online Harassment, Emily A. Vogles, Pew Research Center, https://www.pewresearch.org/internet/2021/01/13/the-state-of-online-harassment/#:~:text=There%20has%20also%20been%20a,on%20the%20rise%20as%20well (last visited October 19, 2023).

sustained harassment. *Id.* Certainly, the defendant's conduct falls within the category of more severe harassment.

The statutory factors enumerated in 18 U.S.C. § 3553(a) specifically contemplate the need for the sentence imposed to deter others from engaging in similar conduct. This factor is particularly salient here when considering the prolific nature of cyber harassment in modern society and the impact that such conduct has on its victims.

## CONCLUSION

In sum, the statutory factors support a 20-month sentence. The defendant engaged in a course of conduct that can be described as nothing other than heinous and cruel. A 20-month sentence is sufficient but not greater than necessary to serve the goals of sentencing enumerated in 18 U.S.C. § 3553(a).

Respectfully Submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: */s/ Arielle F. Klepach*
Arielle F. Klepach
Assistant United States Attorney
Court ID No. A5502706
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9272

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 19, 2023, I served the forgoing motion to all counsel of record via electronic filing through the CM/ECF system.

/s/ Arielle F. Klepach

Arielle F. Klepach
Assistant United States Attorney